BERNARD BROWN and SARAH BROWN, his wife,

*vs.*

HENRY B. DAVIS.

*New Castle, Nov. 25, 1925.*

*Evangelyn Barsky*, for complainants.

*Willaim S. Prickett*, for defendant.

THE CHANCELLOR. The bill is filed by the vendors in a contract for the sale of lands against the vendee named therein. The only defense set up by the answer is that the complainants are unable to convey a good marketable fee simple title to the lands in question.

The premises are known as No. 507 Pine Street, in the city of Wilmington. In 1885 one Elizabeth Feeney conveyed to the complainants' predecessor in title, Thomas H. Hannagan, in fee simple a lot of land in the city of Wilmington which was described

as lying on the westerly side of Pine Street, between Fifth and Sixth Streets, having a frontage on Pine Street of twelve feet nine inches, and a depth of eighty feet, and commencing at a point one hundred and forty-five feet six inches from the southerly side of Sixth Street. Hannagan entered into possession of the property known as 507 Pine Street under and by virtue of this deed. The deed, however, does not correctly state the description of 507 Pine Street. The correct description of 507 Pine Street is of a lot having a frontage of twelve feet nine inches on the westerly side of Pine Street, and a depth of eighty feet, but commencing at a point one hundred and twenty-five feet six inches from the southerly side of Sixth Street. The premises which Hannagan entered into possession of under his deed were therefore twenty feet nearer to Sixth Street than the deed indicated. The testimony is undisputed that Hannagan and his successors in title have had undisputed, exclusive, open and notorious possession of 507 Pine Street ever since 1885, that it was assessed in their names and they have been paying taxes on it. Hannagan, furthermore, never assumed to be seised or possessed of any other property in the block in which 507 Pine Street is located. Who actually possessed 507 Pine Street prior to 1885 is not disclosed by the testimony. Hanangan's deed containing the erroneous description by virtue of which he entered upon his possession, recites the devolution of title upon his grantor as being from Bernard Feeney, whose deed recites title from one Hartley and wife, whose deed in turn recites title from David Pinkerton in 1848. In Pinkerton's deed to Hartley, dated December 28, 1848, the description as it appears in Hannagan's deed is first found. Prior to that date, the premises are recited to have been part of a larger tract.

These are uncontradicted facts. Nothing is shown which in any wise conflicts with them. All the evidence has been produced by the complainants, the defendant offering nothing.

The only question of law which the case presents is whether it is proper for this court to decree specific performance when the title to be conveyed rests upon adverse possession. That the complainants have a possessory title running back for at least forty years admits of no doubt under the evidence. That a title founded on adverse possession for twenty years or more is as good as a rec-

ord title founded on deeds is well settled. *Inskeep, et al., v. Shields, et al.,* 4 *Har.* 345; *Bartholomew v. Edwards,* 1 *Houst.* 17; *Pleasanton v. Simmons,* 2 *Pennewill,* 477, 47 *A.* 697; *Nevin v. Disharoon,* 6 *Pennewill,* 278, 66 *A.* 362; *Doe, dem. Willin, v. Trustees and Wright,* 2 *Boyce,* 197, 78 *A.* 773; *Townsend v. Melson,* 3 *Boyce,* 78, 80 *A.* 352. It is true that equity will not compel a vendee in a contract for the sale of lands to take a title which is not marketable. If the title be in doubt whether because of a question of law or of fact, the defendant is entitled to have the bill dismissed. "It is not right," said the Master of the Rolls *In Re Nichols and Von Joel's Contract,* (1910) 1 *Ch.* 46, "for the court to force a title upon a purchaser which merely may mean that he is buying a lawsuit." But the mere fact that the title which the vendor holds rests upon an adverse possession will not protect the vendee from performance. Courts however grant relief in such cases with caution. The rule which applies is that "where the title depends on a presumption, provided it be such, that if the question were before a jury, it would be the duty of the judge to give a clear direction in favor of the fact, and not to leave the evidence generally to the consideration of the jury," the title is not to be considered in such doubt as to justify a refusal of relief. *Fry on Specific Performance,* (6th Ed.) § 891; *Emery v. Groccock,* 6 *Mad.* 54; *Ottinger v. Strasburger,* 33 *Hun* (*N. Y.*) 466; *Freedman, et al., v. Oppenheim,* 187 *N. Y.* 101, 79 *N. E.* 841, 116 *Am. St. Rep.* 595; *Pratt v. Eby,* 67 *Pa.* 396; *Conley, et al., v. Finn,* 171 *Mass.* 70, 50 *N. E.* 460, 68 *Am. St. Rep.* 399.

The facts disclosed by the evidence admit of no controversy and are so clearly to one effect that if the case were before a jury the court would have no recourse but to instruct in favor of the marketability of the complainants' title.

Decree accordingly, the matter of the existing mortgage being provided for.